Good morning. I'm Joseph Grubb on behalf of William Barclay. This appeal presents two clear issues. One, whether or not the trial court should have given the danger creation instruction that comes out of both the Alexander v. City of San Francisco case and the Billington case, which discusses a little further, and also whether the trial court should have admitted evidence of a non-party eyewitness' arrest history that had dated prior to the accident. And then also what the limit or the scope of that admission of that history should have been. My client is, at the time of this incident, was a minor living with his parents and had done nothing to provoke the police. He was psychologically troubled, lived with his parents, pretty much spent most of his time in the bedroom, in a darkened bedroom at their house. On the incident that arose from this claim, his brother got into an altercation with his parents, a violent altercation. His father called the police, asked them to come over, asked them to arrest his brother, Leroy. And they had a warrant, didn't they? And they had a warrant. They had an outstanding warrant for him. And they didn't know anything about his being there, your client? They did not. I do not believe the record reflects. They knew other than I believe there was some testimony at trial that there was disputed testimony as to that fact. But the mother would not let the police come into the house for a little while. There was a little altercation, maybe? A bit of a discussion on the porch. Ultimately, the police did enter the house, entered directly into it. And they had been informed at that point that the suspect they were seeking, the older brother, was in the basement. They immediately went into the bedroom on the level where they came in, into the darkened bedroom, did not announce themselves. And this is where the testimony gets disputed. But essentially, he merely ensued with William, the non-suspect, the resident of the house. The evidence at trial through Margaret Barkley, who was his sister, and the only eyewitness who wasn't one of the two defendants to this incident, was that Officer Davenport immediately came into the room, did not announce himself, and began striking William Barkley with some kind of object, either a flashlight or a baton. Officer Davenport testified that he came in and did not announce himself, but William Barkley essentially attacked him, not knowing who he was. Well, he didn't say that, but that was our offered evidence at trial that essentially surprised him. Immediately ensued where Officer Davenport grabbed him by the testicles, put his hand on his neck. And then, with his partner, Officer Reikland, proceeded to taser him five times, at least, on the buttocks and the groin and on the back. As they were tasering him, did they already have him in, as it were, control holds? They did. I mean, he was not in handcuffs, but he was in control holds and he was over a couch. And they were still in the process of bringing him under full control or compliance, whatever they want to say. They were in control of him at this time. So the instruction you wanted was to give the jury the perspective that the police officers who were trying to seduce somebody who was resisting him, because he was surprised, apparently, that he was mentally deficient. And I guess there was no dispute that there was some, I mean, he was part of this melee, as you say. He wasn't totally passive. Well, I think there was a dispute, but taking the evidence in the light most favorable to the officers, they claimed he, after they entered the room, struck him. Margaret Barkley, the witness who saw it, said he didn't do anything. Right, okay. Yes, I understand that. I was just trying to, as a general background, to understand the theory of your jury instruction. But there was a melee. I mean, that's undisputed. Whether there was active resistance or passive resistance, the officers were in there. No, wait a minute. Just let me follow through if I can, just to help focus your argument. Because the jury instruction you presented was, a law enforcement officer may not create a danger that requires the use of force if you find that an officer's actions either intentionally or recklessly provoked a violent response from the plaintiff, then that provocation renders the subsequent use of force unreasonable, even if it would have been otherwise reasonable, considering the facts and circumstances confronting the officer. And for that, you cited Alexander. You didn't cite Billington. Was Billington decided by then? I believe Billington was decided by then, but I guess, and I know that one of the judges on this panel was an author of Billington, but I don't believe Billington changes Alexander. Well, it purports to say that Duran, I think, isn't that the case that came in between, that it's been somewhat limited in any event. But it isn't just that there's intentionally or recklessly provoked. There's an objective reasonableness component to that instruction that wasn't there. In other words, did they objectively and were they objectively unreasonable? And this would say that if they intentionally or recklessly provoked, that's part of it, but that's not the Billington formulation. And Billington also talks about there having to be an independent constitutional violation. So what was the independent constitutional violation that you were predicating this on? The independent constitutional violation was entering the room and striking William Barclay unprovoked, the first. So even though they were lawfully inside the house, they entered into a darkened bedroom and there was a constitutional violation by what failure to announce? No, striking without provocation. Yeah, I would argue, and I think that the entering, striking any citizen who's not posing a physical threat just on the fear that they might pose a threat is an objectively unreasonable act. So entering a room, seeing William Barclay essentially hover down in his room and striking him with no, not in self-defense, I suppose, but in order to gain control was the provoking or at least the igniting factor. In Alexander, as in this case, they had a warrant. I know in Alexander it was a different kind of warrant, but we're not contending that they didn't have a right to be in the home. But you can't just cut it off there and say, well, once they're allowed to be in the home to arrest somebody, then we don't follow this sort of escalation analysis. I think from each act that they, if any act that they engage in escalates unreasonably to the next step of the conflict, then the jury should be allowed to consider whether that was unreasonable. This is also because combined with the instruction requested by the defendants, which was given, which is the no-duty-to-retreat instruction as well as the duty to enforce the laws, essentially this, in our perspective, gives almost like a ratcheting effect to the jury and says, well, it goes one way, but it doesn't go the other way. And they had a duty to enforce a warrant, and they didn't have a duty to retreat, but it essentially implied they didn't have a duty not to provoke or to violate the Constitution essentially through that first act of force, striking William Barclay. It's not a negligence theory. It's not an argument of they didn't bring enough police officers or fill the room with sleeping gas or any strange theory like that. Like in Billington, the theory that was really rejected there by the plaintiffs or from the plaintiffs was basically negligence, failure to bring more police officers to cover. Alternate methods. So were you the trial counsel? I was the trial counsel. What was the discussion with the court about this instruction, and what did the court say as to why it shouldn't be given? From my recollection, the discussion was there wasn't really much discussion with the court about that other than it wasn't going to be given, and that's how Judge Panner said it was going to be. And then I think it is undisputed that we properly took exception to failure to give that discussion. You did argue to the jury that the force was excessive in light of the circumstances. I argued to the jury, to the best of my recollection, that all the force was excessive. But the problem is, and I don't think I argued to the jury, that essentially the theory of Billington, and I believe that was expressly rejected by Judge Panner. And this is the problem, because if you believe that at some point William Barclay struck an officer during this melee, well then all the tasing and everything else that follows, a jury being instructed that there's no duty to retreat, essentially would understand that if they haven't been informed essentially that the officers may not unreasonably start this situation. So that was it. And we believe that we should have at a minimum gotten the instruction so that we would have been allowed to argue to the jury. With respect to the other issue, which I realize is an abusive discretion standard, but I think it's important. Let me ask you before you do that, before you leave that, now Judge Fischer has already talked about the fact that apparently the instruction you submitted was flawed. It's not the duty of the trial judge to craft an instruction that cures flaws in an instruction submitted by a lawyer, is it? I would agree. But I don't think this instruction was flawed in the context of this case, because the act that was contended was the precipitating constitutional violation. I don't think there's any dispute. The jury didn't have to be informed that it had to be essentially unconstitutional, I think, this act. I mean, it was on its face striking, at least from my perspective, on its face striking an unarmed civilian who has not done anything to provoke you is an objectively unreasonable thing to do as a police officer. So although maybe this instruction could have put that in there, I don't think it would have made a difference in this case, and I don't think it was necessary because it's not a pattern instruction, simply because the action we were complaining of was striking a man who was crouching on the ground in his own darkened bedroom. And maybe in some cases that would become an argument, but in this case I don't think there's a dispute that that act of violence was unreasonable. With respect to the second issue, and can I just ask one follow-up on that? Billington's gloss on Alexander says, Alexander's requirement that the provocation be either intentional or reckless must be kept within the Fourth Amendment's objective reasonableness standard. Now where in your proposed instruction is that concept introduced in the instruction? Well, I think this concept would have been introduced, the proposed instruction in light of the other instructions regarding excessive force, which do explain what excessive force is, would have informed the jury that it has to be objectively unreasonable. But again, if it's intentionally or recklessly provoking a violence response, I guess I don't read Billington to say that it must, that there can be something that's intentionally or recklessly provoking a violent response that is not objectively unreasonable. Well, if it's objectively, if the circumstances are such that the officers act intentionally in a way that is likely to provoke a response, if I go after you thinking you're a bad guy and you're under attack, the likelihood of acts in self-defense are likely, right? I mean, there's going to be a response. So what, as I understand Billington to say, is that was it, and I understand the theory of your case, that this was a passive sleeping victim who, mistaken identity, was jumped upon, struck, without any objectively reasonable basis for doing so. But I don't see that in the instruction. You're saying you'd have to look to the other instructions for objective reasonableness. Yes, I would, and it's not in that instruction. So I believe it was incorporated, and in this particular context, I don't think there would have been a distinction that could be made. If you believe that William Barclay was struck unprovoked, then there's no distinction in this case that would need to be further informed the jury that it has to be objectively unreasonable, because I would say that's per se objectively unreasonable, if you believe that fact. I just have a little bit of time here, but the other issue, and I know it's an evidentiary issue and it's not necessarily my favorite thing to appeal, but in this case, the judge, I do believe it was an abuse discretion to admit evidence of the only eyewitnesses, prior criminal history, in the sense that all that was was an arrest, and then to further allow the defense counsel to inquire about what the circumstances of that arrest were, et cetera, on the argument that it was police bias, impermissibly tainted her in front of the jury. It was an attempt, essentially, to show a bad character and conformance therewith, because it was an incident wherein she had allegedly jumped on a police officer's back in a different instance. These police officers were not aware of that, and yet asking her if that's what it involved and then, quote, unquote, impeaching her when she denied that's what it involved, even though she was never charged or convicted of this issue by bringing another police officer. Would that have been admissible under 404B on a theory not of bias, but of prior pattern of behavior consistent with what's evidence in this case? I don't think it would be, and I briefed it, and I will have to admit that I'm a little forgetful. I have to look at that again, Your Honor. Well, the word pattern is not in 404B, but I think some of the case law suggests that pattern of behavior earlier on that matches the pattern of behavior in dispute in this case, that that's one rationale for admitting under 404B. I think prior bad acts are expressly not permitted, and maybe I'm mishearing your statement for establishing conformity therewith later on. It's simply not admissible simply for proving character. I'm absolutely on board with that. I'm out of time. Okay. We'll give you a minute to respond. Good morning. This is the Court. Robert Franz for the defendants. On the jury instruction, the jury instruction itself is flawed. I mean, if you read the jury instruction, first sentence, a law enforcement officer may not create a danger that requires the use of force. That's not a true statement. To make that statement correct, you'd have to say a law enforcement officer may not intentionally or recklessly create a danger, because we know from Alexander in Billington that a law enforcement officer that is negligent may create a danger. So even the very first sentence isn't correct, because if the danger is created by the negligence of the officer, then Alexander doesn't apply. So you would have to almost take out that first sentence and then just start by saying, you know, the correct statement would be a law enforcement officer may not intentionally or recklessly create a danger that requires the use of force. If you find that an officer's action either intentionally or recklessly provoked a violent response and that action is an independent fourth amendment violation, then the provocation may render. And you notice they don't use the word may. It was really a directed verdict, and the provocation renders. And then for the reasons already stated, no objective standards. So Alexander is really a situation that applies to tactical maneuvers ahead of time that create a danger. And it's really not applicable to this case. But this case, once the initial force was used, the fight was on and then did not stop. So what you would argue is under the other jury instructions, was it objectively reasonable following, you know, we had the jury verdict, but following their theory of the case, was it objectively reasonable for an officer to come in and strike somebody without any provocation? And, of course, it's not. You know, and I argue to the jury, if you believe Margaret, the sister, the officers used excessive force. If you don't believe her, the officers didn't. And so this really isn't an Alexander or Billington situation. This is really just the start of objectively reasonable conduct. And under that general instruction, the plaintiff can argue anything they want to argue. They can argue escalation. And if you would take a look at the transcript, page 202, they split the closing argument. The plaintiff had Ms. Wolfe, and she did the first closing, and then the second closing was done by him. But in that argument, they were arguing how unreasonable this force was used, and then Ms. Wolfe argued it is unreasonable to create and escalate a situation that wasn't there to begin with. So under the general just excessive force arguments, you can argue, listen, you just can't walk in and create and escalate a thing and give the excuse of using force. So that's why even if this requested instruction was needed, it's harmless, because they argued that anyway. And I basically conceded in my closing that had, if you believe Margaret, if somebody walks in and clubs you for no reason, it's excessive force. So the jury instruction is incorrect, not a correct statement of law, and it's harmless there not to give it anyway. In going to the bias issue, I mean, I agree that this could have come under 404B just in conformity conduct, but we have to place this in context. We have Margaret, the sister, says police officers walked in and just started beating the guy. She then testified that she went in the room and they tackled her, and then some wrestling took place, and then they tased her and cuffed her. Police officers' position was, we're fighting with the brother, and all of a sudden Margaret jumps. Like Davenport said, all of a sudden Margaret jumps on my back. So he's trying to fight her on the back, and wrestling, and then other officers came and got her off the back, and they cuffed her and arrested her. So a couple of years earlier, Margaret, with another brother, Brian, Brian was getting arrested by the Klamath Falls Police Department, and as Brian was being arrested, Margaret jumped on the back of that officer. Okay, so we take the context, this is a key and important witness for the plaintiff, the only witness for the plaintiff that solved the altercation. Now, we know bias comes in. So do you think that a witness, Margaret, who has been arrested by the same agency for attacking an officer from that agency, might not be a little bit biased against the police officers when it's another brother? Obviously. Who wouldn't be biased against police that have arrested you? Okay. So then it really goes, okay, what extent can I show the bias? All right? If you read, we pretty much preliminary worked this out with the judge ahead of time, and if you read the transcript, the judge has asked me, what are you going to prove, France? And I said, well, I want to put her on the stand and say, have you been arrested before? Because that would go to her bias against officers. And this is the same department. And then, Your Honor, I'm just going to ask her, have you been arrested before for assaulting a police officer, and what was the assault? Did you jump on the officer's back? If she said, yes, I jumped on the officer's back, it's done. If she says, no, I didn't jump on the officer's back, I'm going to bring in the prior officer to have him testify. Why do you need jumping on the back as part of it? Why did you need to ask, did you jump on his back? That gets into sounding like you are trying to get it in for conforming conduct. To show the extent of the altercation to show the bias. Let me just give you an example. What if she had just slugged a police officer on a prior occasion? Do you think that I could ask her, okay, you were arrested for assaulting a police officer, yes. Did you slug the officer in the face? I think I can ask that follow-up question. This one was just a coincidence. Instead of slugging the officer in the face, she jumped on his back. I'm not sure why you should be able to ask the slugging in the face. I'm just wanting to show bias. She's been arrested for assaulting an officer. Isn't that enough to get bias? I'm trying to show she really hates the officer. Wait a minute now. She was arrested and not convicted of that, right? Correct. Okay, so you want to get in that she jumped on the back. So does this lead then to her opportunity to get in and say she wasn't prosecuted and she was provoked and get a little mini-trial off to the side? And that's what happened. He asked a follow-up question. Were you convicted for assaulting a police officer? I think he asked, have you ever been convicted? I know he asked that, but that was the best he could do under the circumstances. Well, I kept it pretty limited. We didn't get sidetracked at all. But don't you think when it goes to bias you need to know the extent of what you did? What if you just shoved an officer? Well, you're wanting to show bias. Now you're saying that the nature of the crime itself was enough to show bias because she attacked a police officer in some manner. I want to show that the extent she will go to go against a police officer, what she did, whether she slugged him or jumped on his back, versus that she just accidentally bumped into him. Oh, you accidentally bumped into him, how biased are you? But to attack an officer, to slug him or jump on his back, I mean, the extent, and it was kept very limited. As you can see. I read it. I saw what it could have been. So I think it comes in on bias, and then the second, it's harmless. There's plenty of evidence in the case of all the factors I listed in my closing as to why she was not telling the truth. Thank you. Would you like a minute in response? The fact, although I disagree that in a civil rights case, I mean, the bias, the arrest is still highly prejudicial. Even assuming that the fact that she'd been arrested by the police was admissible, what she did to be arrested shows nothing towards bias unless it was something like framing police officers or some grand scheme against police officers. The fact that she'd been arrested was enough, and ultimately, and I think they cited the Fenner case, the fact that she was the only other eyewitness to this event, the fact that even impeaching her character, which is essentially what this was trying to do, not show bias, or to show conformance, conduct and conformity therewith, was incredibly prejudicial because therefore basically the character of this only eyewitness was introduced. It was unnecessary. Isn't Heath directly on point in this as authority for the admission of this type of evidence? There's one case that's cited, and I think it's the Heath case. I think that case can be distinguished on the grounds that in that case they'd stipulated to bias or at least offered to stipulate bias. But they didn't accept the stipulation. Right. And they went ahead and presented the evidence. But there were actually convictions as well and multiple arrests. This is one incident stemming three years before that. There is no evidence either of these officers that are defendants in this case had any knowledge of. So whether to the extent the court permits it, the only permissible question should be have you been arrested by the police? Yes. Not did you jump on somebody's back, which, again, the defense, as I pointed out in our brief, made this a very important point. If you believe she jumped on an officer's back ever, or if you don't believe she ever jumped on an officer's back, then you have to find the plaintiff. It was a crucial issue, her credibility, and she admitted she'd been arrested. Okay. Thank you. Thank both of you for your help for our argument. The case of Barkley v. City of Klamath Falls is now submitted for decision. The last case in our argument calendar this morning, still morning, Ready, ready, counsel. Thank you.
judges: Fletcher, Fisher, Roll